Judge Roth and I are privileged to have with us Judge Arthur Alarcon sitting by designation from the Ninth Circuit. I have sat with Judge Alarcon in the past and it's something that I have requested again and I hope again and again. Thank you very much for being with us. Thank you. I concur in that. Thank you judge. We have five cases to be argued before us today. The first one is United States v. Lynch, number 08-1973. Mr. Farber, Ms. Chin, go on up. Your Honor, before we get started I would like to be able to reserve five minutes for rebuttal. That's fine. Thank you. Your Honor, this appeal raises two issues. First, that the district court failed to resolve material factual disputes and direct that a fact-finding hearing be held as requested. And second, that the restitution award was illegal. Federal Rules of Criminal Procedure, Rule 32, small i, 3B provides that a sentencing court must resolve all disputed portions of a pre-sentence report for other matters in contention. Actually, I have a preliminary question. Yes, Your Honor. Did Lynch waive his right to contest his sentence at the outset? In other words, what was the appellate waiver in this case? The appellate waiver was that if he was sentenced within the stipulated range reached by the parties, he waived his appeal. But then, that makes sense. It says if the total guidelines offense level of 12, he waives. But then it goes on later on and says in paragraph 9, which is on 833, the provisions of this paragraph are binding on the parties even if the court employs a guidelines analysis different from that stipulated to 17? 17. So, why didn't he waive if they ended up with 17? Because the court employed other factors than that were anticipated by the parties. The parties were in agreement that Mr. Lynch's... But it says here the court, in effect, can look at other factors, right? Even if the court goes by a different path, if you will. I would submit it was the Mr. Lynch would not be having an appellate right should the court use other factors to reach another sentence, again, within that guideline range. How is what you're saying different from what a waiver of the court employing a guidelines analysis different from that stipulated? Because in the district court level, the court gave enhancements that were not anticipated by either party. The abuse of trust enhancement and additionally the loss amount. So... Didn't Lynch agree that he would make full restitution for losses resulting from the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense? And doesn't that cover the whole spectrum? The plea that he entered was employing a person who was prohibited from being in labor activities. That is a very distinct offense. And I submit the embezzlement that was in count one is an entirely different offense and cannot in any way be construed as underlying or be part of the scheme. But isn't it part of the pattern of criminal activity? I submit it's entirely different, Your Honor. How is it entirely different? In other words, you can look at purposes of doing the guidelines calculation. I mean, that's... Yes. And if you can look at relevant conduct, and what the court did here is it had a 12-point enhancement instead of an 8 and then plus 2 for breach of trust position. What is the... Why is that not relevant to have money funneled from this organization to Lynch at all? And there was an additional... There was $296,000 that he got and $71,000 that went to the individual who was previously prohibited from being involved in activities. Well, the second one first is Mr. Lynch sharing his own personal monies with a person who was prohibited. But it's... But that's... The double count is 71. So it's $296,000. So if you look at $296,000, which is the number the court came to, that gives you the 12-level addition rather than the 8-level. In other words, it's based on the amount of money involved. Right. But Mr. Lynch's culpability relates solely to the employing of the prohibited person. He did not admit to being involved in a conspiracy to embezzle. He disputed from the onset that he actually ever embezzled. It was in dispute from the very beginning that PEG, Professional Employees Guild, was ever an actual union. This was a very unique type of scheme. I hesitate to use the word fraud because in the end, everyone got what they bargained for and literally no one was harmed. This was one of the situations where you had a group of individuals who were family members who formed an organization and called themselves a union. But part... Count two, which was the money that was given to the prohibited person, is what he pled to. Correct. But it was part of the scheme, was it not, that was tied in for relevant conduct was count one, knowingly and willfully conspiring with Crompton and Kramer to embezzle money and funds from the PEG, from the guild. I would submit they are totally different, John. The second one, this is an individual... No, they are different. There's no doubt about it. The question is, is the second one tied in with what happened with the first one? Only in the sense that they were similar parties. But other than that, no. We have an individual who was employed, having been prohibited from prior union activities. No intent to steal money in that situation. Merely an intent to bring in a person who should not be involved in union activities and then share one's own lawfully earned money, which the government conceded at the sentencing hearing, that that $70,000 was lawfully earned by Lynch. With regard to count one... We have a recent case only, which I think, Dallum, if I'm not mistaken, which talks about relevant conduct. And why isn't what he was alleged to have done in relevant conduct to what he pled guilty to with respect to count two? Well, count one, if you were to take it on its face value, is a situation where there's a intent to defraud union members, to steal money from them. If we were going to assume that, in fact, occurred, that would be a separate and distinct act than just bringing in an individual who was barred from union activities and then working with him on the side and sharing one's own lawfully earned money. So on count one, you have stealing of money. Count two, you have sharing of lawfully earned money. Count one, you have a betrayal of trust. And count two, there is no trust issue. So they are distinct crimes. Let's switch to the restitution issue, which Judge Roth mentioned. The first question on the board is that, why don't you go actually back to her question as to the restitution issue. Do you remember it? No, I'm sorry, Judge, I don't. Well, the pattern of activity, the same pattern of activity. If it helps you, I didn't remember it either. I appreciate that, Judge. Fortunately, I did. Thank God. Well, let me first start by saying that there is no harm to any of the individuals. Everyone has been made whole. So the issue of restitution in itself is rather confusing. In the end, the individuals who joined the union got the benefit of what they paid, which was their health benefits. There is no dispute. In the end, PEG was liquidated because it was a fraudulent union. And the money that was left within the reserve was sent back to the union members. Each union member got a $1,300 windfall, money they were not expecting. So not only did they get what they were bargained for, but they got more money. So to send an additional $296,000 at this point is just simply to give the so-called victims an additional windfall. The $70,000 was agreed to by Mr. Lynch. I'm not going to say that's not a windfall, but he agreed to it, and that's what he will be willing to pay. Let me see if I can just, on page 829, with respect to restitution, at the top of the page it says, in addition, Lynch agrees to make full restitution for losses resulting from the offense of conviction or from the scheme, conspiracy, or pattern of criminal activity underlying that offense to the Professional Employees Guild Welfare Fund in the amount of $70,260. Now, the court ordered him to pay restitution of $296,000. Is that correct? Correct. But there was no objection to that at the sentencing hearing, was there? No, Judge. So we'd be looking for plain error at this point. And there was no argument provided in the Rule 35 motion, was there? Only to the extent that the money was lawfully earned, not to the fact, not to the second issue that the money was overly broad. I would just go into the language of that plea agreement. I asked the court to concentrate on the offense of conviction, and again, highlight the word, that offense. It was clear from the, or it should be clear from the parties, that they were referring to solely the, to the Employee Prohibited Person Count. And I would submit, if there is ambiguity, that it must be resolved in favor of a defendant over the government. And the government, at the point in time, was expecting the $70,000. That was the understanding of all the parties. And the... If that was the understanding, why didn't somebody stand up and say at the time that, no, I think what we've agreed to is that we will have restitution for $70,000 plus, $70,260. Well, there was that, there was a general objection, but not a further explanation as to that particular, it was a misstep at the district court level. I will concede that. And that's why I asked for a plain error review. We'll have some questions for the government on the restitution, so we'll get you back. Judge Alicorn, do you have any questions? No. Thank you very much. Good morning. May it please the Court. Jennifer Chin, on behalf of APPLI, the United States. As a threshold issue, I just wanted to... If I may start where, just where we left off. I don't understand, or at least it appears to me at the outset, that what I quoted from A29 of the appendix, Lynch agrees to make full restitution for the losses resulting from the offenses, offense of conviction, or from the scheme, conspiracy, or pattern of criminal activity underlying that offense, which would be count one, to PEG, in the amount of $70,260. Didn't the government, in effect, agree that the amount of restitution can only be $70,260 and not $296? I don't think that's the case, Your Honor. Well, how do you read that language? It is an awkwardly phrased provision, but to read it the way that defense counsel suggests... Well, what's awkward about it? With the $70,000 at the end of that sentence. Well, the district court doesn't have to agree with the plea agreement anyway. That's correct. That's what us trial judges think. Because the plea agreement also specifically says that the district court will engage in fact-finding, and that is the type of issue that is appropriate for fact-finding during the sentencing procedure. But aren't you now taking a different position than you took before the district court, according to the plea bargain? Well, that is what I wanted to start out with, which is to acknowledge... Is the answer yes? The answer is yes, there is a difference in position. Aren't you a stop from doing that? I don't believe so. I think that in the proceedings below, we took the position consistently that the plea agreement fairly resolved the issues between the parties. And in order not to breach that agreement, stood by the terms of the plea agreement. But the question is not so much whether the district court can go away from it, which clearly it can, but aren't you a stop from doing that? Because it looks like you agreed that the amount of restitution will be $70,260. On appeal, or we have stopped from making that argument, is that...? Well, if you agreed to it once, haven't you agreed to it again? Well, the plea agreement does provide that both parties reserve the right to argue on appeal that any sentencing decision made by the district court was or was not within the district court's discretion and authority. In the proceedings below, as I said, the government would have been in breach of the plea agreement had it not stood by the terms of the agreement. And that is something I don't think defense counsel disputes, that the government at all times did stand by the agreement. Our role now on appeal is somewhat different. Although we would still maintain that the plea agreement represents the end product of the parties' negotiations, our role on appeal is to review the record and see whether, despite the departure from the parties' plea agreement, the district court was acting within her authority and discretion. And we submit that she did. But just backtracking for a second, on restitution, there's a Supreme Court case called Huey in 1990, and a case of our court called Akande, A-K-A-N-D-E, from 1999, where it says that a defendant may not be ordered to pay restitution for losses unrelated to the acts for which they were convicted. He was convicted for the giving of money to a prohibited person. That's correct. And that brings us back to this language of the restitution provision. Because... But why isn't... Okay, from your perspective, in terms of what you agreed to, it looks as if at the outset you're saying, okay, that's true. You can agree, case law says, you can agree to something in addition to what you pled to. That's correct. And that's what the first part of that sentence does. He can... Not only does he plead guilty to the giving of the $71,000 to an individual he should not have given it to, but he also had a conspiracy for the entire offense. Fine. If you stop there, no problem. But then you have, in the amount of $70,260. I think the last phrase, in the amount of $70,260, represents what the parties fully expected would be ordered as restitution here. But had that been the only amount that could have been ordered, I don't think that there would have been a need for that provision that Judge Roth highlighted several times, which is, or from the scheme, conspiracy, or pattern of criminal activity underlying that offense. It's clear that the offense of conviction, the employing of a prohibited person, involved the $70,260. What's not set out is, or I'm sorry, the provision I think allows for a larger amount of restitution should the court decide based on its fact-finding power that the scheme, conspiracy, or pattern of criminal activity underlying the offense of conviction actually led to greater loss How do I get around the statement of the Supreme Court in Huey that, quote, the count of conviction controls the amount of restitution? I think the way around that is under the third exception under the statute which says that a court can in fact order restitution when the parties agree to do so in a plea agreement. And the United States submits that that is the case here. The parties did agree to restitution. They expected it to be in the amount of $70,000 some odd dollars but it says full restitution and it pertains to not only the offense of conviction but related conduct or underlying conduct. And here I'm obviously using shorthand for that phrase that Judge Roth was referring to. It's troubling to me though that the government represented in the plea agreement that the full restitution was $70,000. And today you're saying the district court was correct for coming up with a different figure and that you're supporting this different figure. Isn't that what judicial estoppel is all about? To preclude you from taking a different position today than you did before the district court? Respectfully, Your Honor, I don't think so in this case but I would acknowledge that it is an awkward position that the government finds itself in because it stood by the terms of the plea agreement during the proceedings below, maintained both in its written submissions and orally in the sentencing proceedings as well in the Rule 35 proceedings that this represented a fair resolution of the matter. I don't think, however, that stops or prevents the United States from arguing on appeal that the determination made by the district court was within her discretion and authority even though it departs from what the United States thought was a fair resolution based on an arm's-length negotiation. When your main argument on appeal, however, be that there was no objection at any time to the finding of $296,000 rather than $70,260 and therefore were under plain error review. That's correct. But you're arguing that it wasn't even an error in effect. If there's no agreement, if you read the provision that I quoted to you as saying that you're limiting it to $70,260 it looks as if you've agreed that that was an error, however, when the court found something different. So it looks like there's an error. It's pretty plain, the difference between $70,260 and $296,000. Then the question is does it affect substantial rights? It would seem to, doesn't it? It's a $220,000 difference. It would seem to, yes. But it would not seem to satisfy the other three or at least two of the other prongs of the plain error analysis. Well, there's three and then you can add a fourth which is somehow it affects the integrity of the system. That's correct. Doesn't it appear unfair for a court to accept a plea bargain with a restitution of $70,000 and then to impose a much greater restitution? Doesn't that appear to ensnare the defendant into a plea which later results in a tremendous difference in the restitution? Your Honor, I don't think so and I think that's because the plea agreement is carefully crafted to put the defendant on notice that regardless of the stipulations made by the parties, the court is not bound by those. So I think On restitution, the court can't go beyond the conviction. Can't do relevant conduct with respect to restitution. That's the point of Huey and Akande. So if you can't do it, unless you've agreed, the question then becomes did he agree that you could do it beyond the count of conviction which was $71,000? Right. That highlights an issue a certain complicated issue here because it's not the same issue that would be presented for example if the district court disregarded a stipulation as to abuse of position of trust. I'm just saying that randomly not because it's an issue in this case. Because the statutory authority or the district court's authority to impose the restitution order, it proceeds from the plea agreement itself. So yes, there's a tension because we are saying that the clause must be read and can be read and should be read as authorizing the district court to impose restitution beyond the offense of conviction but the $70,000 itself is not a limit on that restitution order. Let me backtrack. Just so we're let's keep it simple. If there was an objection at the sentencing to the restitution amount of $296,000 what would your position be on appeal? Well I think that the reading of the restitution provision arguably could even under a less deferential standard of review be read to allow for restitution in an amount larger than $70,000. But that is not the issue presented here. Because of the clause that states that What is the $70,260 limit in that sentence then? The $70,000 limit represents the expectation of the parties as to what the restitution order might be or should be. Wasn't it a stipulation by the parties that that was the amount? That is a stipulation on the restitution provision. Yes it is. It looks as if what he's saying is I agree to make full restitution for what I pled guilty to or from this conspiracy that I was involved with in the amount of $70,260. I have no doubt that that is what the defendant and defense counsel and probably the prosecutor in this case also expected. But I think that had it been entirely clear that $70,000 was the only amount that could be ordered, there would be no need for that provision. Even so the district court didn't have to accept it whether there was an agreement that this is the most it can be awarded or that this is what the parties expect. It still is the discretion of the district court to determine that there is a different amount of restitution that's appropriate and particularly where the parties do not object at all to the amount of restitution. I think it's well within the discretion of the district court to make that determination. If I'm understanding you Judge Roth correctly I would agree and say that yes That was a softball. You can sometimes agree with a judge. That's a home run pitch. I'm very happy to that the court was in fact derived its authority to impose a restitution order from the restitution provision but was not bound by the $70,000 amount. And to go back to the failure of defense counsel to make an objection I think that's significant for several reasons. It obviously puts us in the world of plain error review but it also indicates that or at least suggests that that provision didn't clearly and unambiguously say it was $70,000 that restitution could only be in the amount of $70,000. The defendant had several opportunities both in response to the PSR which actually suggested a higher restitution amount in I believe approximately $366,000. There was no objection to that. There was none at the sentencing and those issues were not raised in the Rule 35 written submissions or at the hearing. So I do think that suggests that it is not unreasonable to read that provision as one that authorizes restitution for conduct in addition to the offensive conviction for amounts larger than $70,000. When the court ordered restitution here, what provision of MVRA was the court relying on? I think the court did not make it clear exactly which provision it was relying on. It looks, it appears that it was 3663A small a 3 and that reads the court shall also order if agreed to by the parties in a plea agreement restitution to persons other than the victims of the offense. That's correct. And it all comes back to the agreement. That's correct. I have no further questions. No. Thank you very much. Thank you. And the United States would just ask the court affirm the judgment of the District Court below and if the court decides that remand is necessary on the restitution order that it be remanded with instructions to order restitution in the amount of $70,000 as stated in the plea agreement. Thank you, Your Honor. Thank you. Addressing then once again the concern regarding the restitution order, I would submit that it's clear that the victims directly harmed by the contact constituting the offense or conviction does not apply. Further, I think it's fair to state that the parties did not agree that there would be money paid to these victims that the understanding of the parties both by the government and by defense that the limitation of $70,000 was applicable. So then it really turns to But the question really does if it comes down to just plain error let's assume there was an error. And let's assume the difference between $70,000 and $296,000 is plain and obviously it affects some substantial rights. But in this case if there was no objection, how does it really affect the integrity of the system? Because Why not just say, look, you waived it. It's over. Well, society at large would expect more from a court system to protect rights. A failure by a counsel at a trial level should not impugn the entire system. But if it was so basic it sounds to me like the counsel and obviously it was different counsel that represented him before, is that correct? No. It was not. It was you. It was me. Oh, good. We got Welcome. Thank you very much, Judge. Want to get away? I had 3 minutes and 30 seconds. So, what was going on? Bad day. Judge, I just got away from you. I actually thought I had made a record on it. I would say probably the biggest mistake of the case was that it was an individual I knew personally that I was defending and that probably is something I should not have done. You say you thought you made a recommendation on it. Did the probation report say restitution at the greater amount? I believe it did and I believe I argued not so much regarding restitution but arguing that the money was legitimately earned and should be a carryover. So, if the money was legitimately earned then it should not be money that would be required to pay restitution. So, everyone was on notice there was an objection by the defense that there was a dispute that this money was stolen. So, in that sense, yes, I believe I preserved the issue to challenge the $296,000 theft and make that a restitution issue, but did I come right out and say the $296,000 restitution order is inappropriate? Well, after the court sentence, that's when the restitution order was made and that's where you remain silent. I believe I, again, tried to address it in the Rule 35 motion. Again, highlighting to the court, disputing the legitimacy of PEG, disputing the fact that $296,000 was ever stolen, asserting that the money had been legitimately earned it was a service fee, which was a common mode of being paid. Again, I highlight to the court my motion that was made at the very beginning of this case that this was a very unique situation. This was a non-existent union that was only a union for purposes of getting health care benefits. The whole organization was structured so individuals who could not receive health care benefits on their own at a group discount rate got it by joining a union. And everyone knew it was not a union. The family that ran the business, my clients who was the health care broker, the insurance companies that were selling the discounted insurance, selling it at a discount because in the end they were selling 4,000 policies so it was worth it for them to turn a blind eye to whether or not the union was legitimate or not. In the end, there was no theft. The money came out of the coffers of the union. The union members got their health care benefits at more than half the price of what they were paid before. The people from PEG were happy to give my client the service fee which he asked for because they needed his connection to continue. He was the intermediary between the health care providers and the union. Aren't you bound by the plea agreement that it was a union? We are bound by the plea agreement to the extent that we said that he employed a person who was prohibited from participating in union activities. So to the extent that it was filed as a union and it was registered legally as a union with state authorities, yes, we are bound to that recognition. But I submit it is a far cry between... Can you argue then, turn around and argue, well it really wasn't a union and therefore we shouldn't expect that level of fiduciary care and concern that would be involved with a union? I believe I can because the second count does not require a fiduciary duty. The first count would require it. The second count is a matter of employing someone who should not have been employed and then sharing one's personal... By a union. But if that's the case, then it has to be a union. I guess I'm arguing oranges and apples. It's a union in the literal sense. It's not a union in the actual sense. In the first instance, in count one, it would require a greater finding, I believe, as to the legitimacy. I'm lost. Does literal mean actual? Yes. Just a final question, going back to the thing that I keep harping on. Did you negotiate this agreement with the government? I did. And what did you think the language that I quoted from A29... Can we determine that at this point? That would be evidence that... He's the one who negotiated it. Yeah, but we don't take evidence. I understand. If you thought... Let me rephrase it. If you thought that it limited it to 270,000 260, wouldn't that have been the first thing you would have brought up at the sentencing hearing? Again, I think it's inappropriate for us to consider the mental process of the defense counsel particularly in view of the fact that this may come before another court at another time to take evidence on that subject. I'm trying to figure out... I.e. ineffective assistance of counsel. If I may say... It has crossed my mind that the 2255 option is clearly available to my client. And I think that's not something at this time that we should bind counsel on. Actually, I was trying to throw a softball. That's okay. I appreciate it. That will take the matter under advisement. Thank you very much, Your Honor. Have a nice day. We'll call the next matter.